**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO.: 5:26-CV-283** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **236 PEACHBELT ROAD, THOMASTON,** | : | |
| **UPSON COUNTY, GEORGIA,** | : | |
| | : | |
| **Defendant Property.** | : | |
| | : | |

## VERIFIED COMPLAINT FOR FORFEITURE

COMES NOW, Plaintiff, the United States of America, by and through its attorney, the United States Attorney for the Middle District of Georgia, brings this complaint and alleges as follows in accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure:

### Nature of the Action

1.     This is a civil action *in rem* brought pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C) to forfeit and condemn to the use and benefit of the United States of America certain real property, to wit:  236 Peachbelt Road, Thomaston, Upson County, Georgia, and any appurtenances and improvements thereon.

### The Defendant in Rem

2.     The Defendant Property is real property known as 236 Peachbelt Road, Thomaston, Upson County, Georgia, and any appurtenances and improvements thereon, which is more particularly described as:

All that tract or parcel of land lying and being in the Land Lot 259, 10th Land District, Upson County, Georgia, described as Tract "F", containing 12.628 acres, more or less, more particularly described by that certain plat of survey entitled "Plat For David F. Harris and Helen Staats Harris", prepared by Gary Fred Self, GRLS No. 1922, dated June 28, 1992, recorded in Plat Book 15, Page 219, Upson County Land Records. Said plat of survey and record thereof are by reference made a part hereof for a more accurate description of said property.

Tax Map Parcel No.: 045 031

3.     The record owner of the Defendant Property is Lauren Gaskin Hall (hereinafter referred to as " L. Hall").  The promissory note was signed by L. Hall, Gerald Thomas Hall, and Denita B. Hall as the "Borrower" and dated the same date as the Deed to Secure Debt, October 28, 2019.[1]

### *Jurisdiction and Venue*

4.     Plaintiff brings this action *in rem* in its own right to forfeit the Defendant Property.  This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5.     This Court has in rem jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this District, and 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the action accrued in this District.   Upon the filing of this Verified Complaint, the United

---

[1] Lauren Gaskin Hall is the wife of Jonathan Hall, and Gerald Thomas Hall, and Denita B. Hall are Jonathan Hall's parents.

States will proceed under 18 U.S.C. § 985, pursuant to Supplemental Rule G(3)(a) of the Federal Rules of Civil Procedure, because the Defendant Property is real property.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this District, and 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the action accrued in this District.

7.      The Defendant Property has not been seized but is located within this District and within the jurisdiction of this Court.   The United States does not request authority from the Court to seize the Defendant Property at this time.   The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

      a.      Post notice of this action and a copy of this Verified Complaint on the Defendant Property;

      b.      Serve notice of this action and a copy of this Verified Complaint on the owner(s) of the Defendant Property;

      c.      With the authorization of the Court, execute a writ of entry for purposes of conducting an inspection and inventory of the Defendant Property; and

      d.      File a *lis pendens* for the Defendant Property in the appropriate county real estate records, notifying the public of the Defendant Property's status as a defendant in this *in rem* action.

The United States may also, as provided in 19 U.S.C. § 1606, appraise the Defendant Property in conjunction with the execution of the Writ of Entry.

### *Basis For Forfeiture*

8.      The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it is property, real or personal, which constitutes or is derived from

3

proceeds traceable to a violation of 18 U.S.C. § 1343 (Wire Fraud), or a conspiracy to commit such offense.

9.     The Defendant Property is also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957 (Money Laundering), or is property traceable to such property.

### *Statutory and Regulatory Framework*

10.     Pursuant to Title 18, United States Code, Section 1956(a)(2), it is unlawful for any person to transport, transmit, or transfer, or attempt to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States (A) with the intent to promote the carrying on of specified unlawful activity; or (B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part— (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

11.     Title 18, United States Code, Section 981(a)(1)(A) provides for the forfeiture of any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 or any property traceable to such property.

4

12.     Title 18, United States Code, Section 981(a)(1)(C) provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a "specified unlawful activity", or a conspiracy to commit such offense.

13.     Pursuant to Title 18, United States Code, Section 1956(c)(7)(A), through Title 18, United States Code, Section 1961(1)(B) the term "specified unlawful activity" includes violations of Wire Fraud, more specifically, Title 18, United States Code, Section 1343.

14.     Pursuant to Title 18, United States Code, Section 1961(1)(B), as incorporated by Title 18, United States Code, Section 1956(c)(7)(A), the term "specified unlawful activity" includes violations of Title 18 United States Code, Sections 1956 and 1957 (the laundering of monetary instruments).

### *Factual Allegations*

15.     Since November 2025, law enforcement officers with the Thomaston Police Department (hereinafter "TPD"), and agents with the Internal Revenue Service - Criminal Investigation (hereinafter "IRS-CI") and the Georgia Bureau of Investigations (hereinafter "GBI") have been investigating the illegal activities of Jonathan Hall ("hereinafter referred to as "J. Hall").

16.     The investigation revealed that from at least 2019 through the end of 2025, J. Hall operated as an unlicensed unregistered securities manager in the state of Georgia. J. Hall represented himself as a graduate from Georgia State University (hereinafter "GSU") with an undergraduate degree in economics and Emory University with an MBA

in finance with distinctions in econometrics and capital markets.  J. Hall also represented himself as a Goldman Sachs employee with extensive trading experience.

17.     The TPD served a subpoena to Emory University on November 18, 2025. Emory University responded to the subpoena on November 24, 2025, stating that there were no records responsive to the subpoena request.  The TPD served a subpoena to GSU on November 18, 2025. GSU responded to the subpoena on November 24, 2025, with transcript records that show that J. Hall did not finish a degree at GSU.  The TPD served a subpoena to Goldman Sachs on November 24, 2025. Goldman Sachs responded to the subpoena on December 11, 2025, and stated that there were no records of any current or former employee by the name of Jonathan Thomas Hall.

18.     According to the Georgia Secretary of State, Corporate Division, J. Hall's investment company, Walter Douglas Investments and Holdings LLC ("WDIH LLC") was incorporated on November 26, 2014, and was administratively dissolved on October 22, 2020. The principal office address was initially listed as 1280 West Peachtree Street, NW, Apartment 3407, Atlanta, Georgia 30309, and was later listed as 106 Seminole Road, Thomaston, Georgia 30286. The business organizer and registered agent's name listed is Jonathan Hall.

19.     According to the Georgia Secretary of State, Corporate Division, Walter Douglas Investments LLC ("WDI LLC"), another one of J. Hall's businesses, was incorporated on February 21, 2023, and administratively dissolved on September 13, 2024. The principal office address for the business is listed as 236 Peachbelt Road, Thomaston, Georgia 30286 ("Peachbelt Road"). Peachbelt Road was also the address of J.

Hall's primary residence.  The business organizer is listed as Jonathan Thomas Hall.  The registered agent name listed is United States Corporation Agents Inc, with an address of 1420 Southlake Plaza Drive, Morrow, Georgia 30260.  The City of Thomaston does not have a business license on file registered to the Peachbelt Road address.

20.    As part of the fraud scheme, J. Hall persuaded individuals to invest with his investment company, WDIH LLC, and would then sever communication with some of his clients after he received their money.  Victims invested with cash, personal check, cashier's check, ACH transfer, or wire transfer.  J. Hall would use the funds he received from his clients to pay other clients and fund personal expenses.  J. Hall is well known in his community and perpetuated himself as a knowledgeable investor.  J. Hall gained most of his investors through word of mouth within his community. Additionally, J. Hall provided most victims with a prospectus letter to persuade them to invest with his company.  J. Hall's prospectus letter stated that his fund has been in existence for seven years and has not had a losing year.

21.    On November 13, 2025, D.W., a victim of J. Hall's scheme, filed a police report and was contacted by the TPD.  D.W. is a 66-year-old male who resides in White, Georgia. D.W. stated that he knew J. Hall for over seventeen (17) years, and that J. Hall was persistent with trying to get him to invest in his investment firm. J. Hall provided D.W. with a "prospectus letter" which laid out a general outline of the basics of the fund and how it works. The business name listed on the prospectus letter was WDIH LLC. Initially, J. Hall wanted D.W. to invest one million dollars; however, D.W. stated that he could not afford that amount. Then, J. Hall tried to get D.W. to invest $500,000.00;

however, D.W. stated that he still could not afford that amount.  Eventually, J. Hall was able to get D.W. to invest $250,000.00 through a wire transfer on April 11, 2025.

22.    The wire transfer that D.W. sent was via Truist bank (NW Georgia-8460408 branch) and the originator listed showed D.W. with his address in White, Georgia. ID proof was provided at the time of the wire transfer.  The receiving bank listed was Colony Bank with a routing number of 061202672. The beneficiary on that banking account showed Walter Douglas Investment of 236 Peachbelt Road, Thomaston, Georgia 30286 – account number XXXXX4687.  This information was provided by D.W. and corroborated by agents through records from Colony Bank.

23.    D.W. further stated that after the wire transfer was completed, he was notified by J. Hall that he would be receiving a "statement" laying out the terms of the investment.  D.W. said all communication by J. Hall ceased after the wire transfer was completed.  D.W. stated that when he had not received the statement, he reached back out to J. Hall and inquired about the statement. D.W. stated J. Hall said all his information pertaining to the investment was being stored away in the "friends' folder" and he would send him a statement. D.W. stated when June or July of 2025 rolled around and he had yet to receive any type of statement or confirmation, he again reached out to J. Hall by phone. D.W. this time told J. Hall if he did not receive a statement or any documentation, he would be getting his lawyer involved. D.W. said at that point, J. Hall hung up the phone.

24.    On December 18, 2025, TPD executed a search warrant at J. Hall's residence at 236 Peachbelt Road, Thomaston, Georgia 30286. During the execution of the search

8

warrant, TPD located multiple documents related to Walter Douglas Investments, multiple banking documents/statements, multiple client letters sent to J. Hall, and several pieces of mail addressed to J. Hall from clients and or other investors, printed email exchanges, several thousand dollars' worth of loose U.S. currency, along with an abundance of coins, multiple electronics, including laptops, tablets, and cell phones, and other miscellaneous items. TPD seized over one hundred (100) different items of evidential value. TPD located a diploma from Georgia State University with J. Hall's name on the front but upon flipping the diploma over, there was a sticker stating the diploma is a novelty item in which J. Hall ordered. There was a felony amount of suspected marijuana which is pending laboratory testing located in a separate shed/building for which he was subsequently arrested for. Those state charges remain pending. TPD located client letters showing clear dissatisfaction with their business transactions and lack of communication by J. Hall. TPD located two (2) awards within the office space of the residence that appeared to be from Goldman Sachs and awarded to Jonathan Hall. Since TPD released the press release to the public regarding J. Hall's arrest, several people have come forward claiming they too have not had any type of returns on their investment with Jonathan Hall and Walter Douglas Investments. These individuals include several of J. Hall's family members and friends.

25. During the execution of the search warrant, TPD interviewed J. Hall. During the interview with J. Hall, he admitted that he is not an employee with Goldman Sachs but stated he has an affiliation with the company. J. Hall said Goldman Sachs sends him to New York to train people in investing. J. Hall stated his accountant handles all his

9

tax matters and would not provide his accountants' information. J. Hall maintained that he graduated from Georgia State University as well as Emory University even after presenting him with the fact that subpoena requests show he did not graduate from either. J. Hall stated that he agrees that his prospectus letter was deceptive to his clients. J. Hall admitted to using some of his clients/investors' money to fund his personal life and personal expenses. J. Hall stated that D.W. ceased contact with him; however, per text exchanges provided by D.W., J. Hall ceased contact with D.W.

26.    GBI and TPD have interviewed at least fifty (50) victims. The victims stated that they invested with J. Hall because he postured himself as a knowledgeable investor with experience. J. Hall rarely sent his clients any account statements. Most victims stated that once they requested any money back from J. Hall, communication stopped. The total known loss amount from the victims interviewed is $8,511,474.00. Notably, on May 19, 2025, victim J.D. wired J.Hall $1,000,000.00 payable to Walter Douglas Investments at J. Hall's direction for investment purposes. J. Hall provided J.D. with a prospectus letter and periodic "statements," which J.D. described as unprofessional and inconsistent with legitimate brokerage statements. J.D. stated that communication with J. Hall became less frequent following the investment. J.D. requested a partial withdrawal of his investment; however, J. Hall stated that the funds could not be redeemed due to tax implication, option strategies, or holding period requirements. J.D. never received any return of principle or profits from his investment.

27.    Additionally, on June 9, 2022, victim C.D. provided J. Hall with a $35,000.00 cashier's check made out to Walter Douglas Investments for investment purposes. J. Hall

10

did not provide C.D. with any account statements or profit/loss reports. J. Hall promised C.D. that he could make more than five (5) times the amount C.D. invested within a three (3) year period or more. C.D. reached out to J. Hall via text message attempting to withdraw $15,000.00 of his investment funds to help purchase an apartment due to his wife's breast cancer diagnosis. J. Hall did not respond to C.D.'s request, and C.D. never received any return of principle or profits from his investment.

28.     Furthermore, on August 3, 2021, victims J.E. and A.E. provided J. Hall with $50,000.0 cash for investment purposes. Then, on June 9, 2022, J.E. and A.E. provided J. Hall with an additional $50,000.00 check for a second investment. J. Hall provided J.E. and A.E. with a prospectus letter; however, J. Hall never provided J.E. and A.E. with any formal account statements or profit/loss reports. J.E. and A.E. requested to liquidate their account, and J. Hall agreed to pay J.E. and A.E. monthly until the account was fully withdrawn. J. Hall missed the payment for the first month. J.E. and A.E. never received any return of principle or profits from their investment.

29.     All three (3) of the aforementioned victims stated that J. Hall represented himself as a knowledgeable investor and an employee at Goldman Sachs.

### *Tracing of Fraudulently Obtained Funds*

30.     Records indicate that J. Hall's wife L. Hall purchased the Defendant Property on or about October 28, 2019, for $365,000.00, and that the twenty year mortgage was approximately $328,500.00. The Deed to Secure Debt was signed by L. Hall and by J.Hall's parents.

11

31. WDIH LLC's business bank account number XXXXX4687 was opened on December 28, 2018, at Colony Bank. Lauren Gaskins-Hall is listed as the sole signer on the account. The beginning balance in the business bank account on October 1, 2019, was $118,235.27. Between October 10 and October 21, 2019, there were three (3) incoming wire transfers from investors totaling $85,000.00. The main deposit sources in the business bank account were incoming wire transfers from clients and cash deposits. There are no employee wage deposits into the business bank account. There is no evidence to support that J. Hall has any legal sources of income.

32. On October 28, 2019, an outgoing wire transfer (Wire transfer 30711) from Colony Bank Business Account Number XXXXX4687 in the name of Walter Douglas Investments and Holding ("Colony Account #4687") was sent to Stribling Law Firm in the amount of $45,417.95. Stribling Law Firm was the law firm responsible for closing the purchase of the Defendant Property. Additionally, between October 2020 and November 2025, through a series of check payments, a total of approximately $87,076.84.00 was sent from Colony Account #4687 to West Central Bank of Georgia. West Central Bank of Georgia is the mortgage lender for the Defendant Property. These funds originated from investment deposits from victims of J. Hall's Ponzi Scheme as shown in the table below:

| Date | Transaction | Deposit/Proceeds | Monetary Transaction |
|---|---|---|---|
| 10/10/2019 | Incoming Wire Transfer – Victim D. L. | $5,000.00 | |
| 10/11/2019 | Incoming Wire Transfer – Victim S.C. | $30,000.00 | |
| 10/21/2019 | Incoming Wire Transfer – Victim D.L. | $50,000.00 | |
| 10/28/2019 | Outgoing Wire Transfer – Stribling Law Firm | | $45,417.00 |
| 10/21/2020 | Check #1120 – West Central Georgia Bank | | $630.00 |
| 11/2/2020 | Deposit | $15,000.00 | |
| 11/4/2020 | Deposit | $22,750.00 | |
| 11/13/2020 | Incoming Wire Transfer – Victim P.F. | $5,127.54 | |
| 11/24/2020 | Incoming Wire Transfer – Victim T.G. | $15,000.00 | |
| 12/28/2020 | Deposit | $50,000.00 | |
| 12/29/2020 | Check #1135 – West Central Georgia Bank | | $2,085.89.00 |
| 1/15/2021 | Deposit | $500.00 | |

| 1/22/2021 | Deposit | $3,000.00 | |
|---|---|---|---|
| 2/5/2021 | Deposit | $10,000.00 | |
| 2/11/2021 | Check #1007 – West Central Georgia Bank | | $700.00 |
| 3/1/2021 | Check #1008 – West Central Georgia Bank | | $2,085.89 |
| 3/5/2021 | Incoming Wire Transfer – Victim J.W. | $5,000.00 | |
| 3/12/2021 | Check #1010 – West Central Georgia Bank | | $700.00 |
| 3/18/2021 | Deposit | $30,000.00 | |
| 3/25/2021 | Check #1014 – West Central Georgia Bank | | $2,085.89 |
| 4/13/2021 | Check #1019 – West Central Georgia Bank | | $600.00 |
| 5/10/2021 | Incoming Wire Transfer – Victim N.W. | $50,000.00 | |
| 5/26/2021 | Check #1027 – West Central Georgia Bank | | $2,085.89 |
| 7/26/2021 | Check #1031 – West Central Georgia Bank | | $2,085.89 |

14

| 11/15/2021 | Incoming Wire Transfer – Victim D.B. | $5,000.00 | |
| 11/18/2021 | Deposit | $200.00 | |
| 11/18/2021 | Deposit | $271,000.00 | |
| 11/26/2021 | Check #1039 – West Central Georgia Bank | | $2,085.89 |
| 1/28/2022 | Incoming Wire Transfer – Victim W.R. | $300,000.00 | |
| 2/23/2022 | Deposit | $26,500.00 | |
| 3/1/2022 | Check #1258 – West Central Georgia Bank | | $2,085.89 |
| 3/7/2022 | Deposit | $11,200.00 | |
| 3/9/2022 | Incoming Wire Transfer – Victim J.B. | $315,244.00 | |
| 3/25/2022 | Check #1265 – West Central Georgia Bank | | $2,085.89 |
| 4/29/2022 | Check #1201 – West Central Georgia Bank | | $2,085.89 |
| 6/10/2022 | Deposit | $85,000.00 | |
| 6/14/2022 | Incoming Wire Transfer – Victim K.V. | $350,000.00 | |

| | | | |
|---|---|---|---|
| 9/1/2022 | Deposit | $5,000.00 | |
| 9/19/2022 | Incoming Wire Transfer – Victim J.B. | $200,000.00 | |
| 9/27/2022 | Check #1231 – West Central Georgia Bank | | $2,085.89 |
| 10/26/2022 | Check #1271 – West Central Georgia Bank | | $2,085.89 |
| 10/28/2022 | Deposit | $75,000.00 | |
| 11/8/2022 | Incoming Wire Transfer – Victim K.V. | $150,000.00 | |
| 11/9/2022 | Deposit | $6,000.00 | |
| 11/14/2022 | Deposit | $50,000.00 | |
| 11/29/2022 | Incoming Wire Transfer – Victim J.B. | $225,000.00 | |
| 12/9/2022 | Deposit | $5,000.00 | |
| 12/28/2022 | Check #1287 – West Central Georgia Bank | | $2,085.89 |
| 1/12/2023 | Deposit | $50,000.00 | |
| 1/26/2023 | Check #1241 – West Central Georgia Bank | | $2.085.89 |
| 2/1/2023 | Deposit | $50,000.00 | |

| 2/10/2023 | Deposit | $20,000.00 | |
| 2/27/2023 | Check #1293 – West Central Georgia Bank | | $2.085.89 |
| 3/28/2023 | Incoming Wire Transfer – Victim J.A.B. | $6,000.00 | |
| 5/31/2023 | Deposit | $50,000.00 | |
| 7/21/2023 | Deposit | $40,000.00 | |
| 7/25/2023 | Deposit | $10,000.00 | |
| 7/26/2023 | Check #1041 – West Central Georgia Bank | | $2.085.89 |
| 8/14/2023 | Deposit | $75,000.00 | |
| 8/25/2023 | Check #1043 – West Central Georgia Bank | | $2.085.89 |
| 9/18/2023 | Deposit | $15,000.00 | |
| 9/26/2023 | Check #1048 – West Central Georgia Bank | | $2.085.89 |
| 12/11/2023 | Deposit | $4,200.00 | |
| 12/14/2023 | Deposit | $5,500.00 | |
| 12/14/2023 | Deposit | $100,000.00 | |
| 12/26/2023 | Check #1355 – West Central Georgia Bank | | $2.085.89 |

| Date | Description | | |
|------|-------------|--|--|
| 1/12/2024 | Deposit | $50,000.00 | |
| 1/19/2024 | Deposit | $50,000.00 | |
| 1/24/2024 | Deposit | $75,000.00 | |
| 1/26/2024 | Check #1364 – West Central Georgia Bank | | $2.085.89 |
| 6/11/2024 | Incoming Wire Transfer – Victim M.B.W. | $100,000.00 | |
| 6/26/2024 | Check #1378 – West Central Georgia Bank | | $2.085.89 |
| 7/23/2024 | Deposit | $15,000.00 | |
| 8/2/2024 | Deposit | $400,000.00 | |
| 8/7/2024 | Deposit | $100,000.00 | |
| 8/23/2024 | Check #1393 – West Central Georgia Bank | | $2.085.89 |
| 9/19/2024 | Deposit | $190,000.00 | |
| 9/25/2024 | Check #1446 – West Central Georgia Bank | | $2.085.89 |
| 9/30/2024 | Deposit | $50,000.00 | |
| 10/28/2024 | Check #1455 – West Central Georgia Bank | | $2.085.89 |

| 10/30/2024 | Incoming Wire Transfer – Victim M.B.W. | $180,000.00 | |
| 11/26/2024 | Deposit | | |
| 11/26/2024 | Check #1463 – West Central Georgia Bank | | $2.085.89 |
| 12/24/2024 | Check #1471 – West Central Georgia Bank | | $2.085.89 |
| 1/22/2025 | Incoming Wire Transfer – Victim M.P. | $1,000,000.00 | |
| 1/24/2025 | Deposit | $300,000.00 | |
| 1/27/2025 | Check #1405 – West Central Georgia Bank | | $2.085.89 |
| 3/7/2025 | Incoming Wire Transfer – Victim T.S.M. | $100,000.00 | |
| 3/14/2025 | Check #1428 – West Central Georgia Bank | | $1,999.88 |
| 4/11/2025 | Incoming Wire Transfer – Victim D.W. | $250,000.00 | |
| 4/15/2025 | Incoming Wire Transfer – Victim W.A.R. & B.T.R. | $57,000.00 | |
| 4/17/2025 | Deposit | $25,000.00 | |

| 4/21/2025 | Deposit | $15,000.00 | |
|---|---|---|---|
| 5/19/2025 | Incoming Wire Transfer – Victim J.D. | $1,000,000.00 | |
| 5/27/2025 | Check #1492 – West Central Georgia Bank | | $1,999.88 |
| 6/26/2025 | Check #1503 – West Central Georgia Bank | | $1,999.88 |
| 7/28/2025 | Check #1524 – West Central Georgia Bank | | $1,999.88 |
| 8/12/2025 | Incoming Wire Transfer – Victim C.P.M. | $10,000.00 | |
| 8/27/2025 | Incoming Wire Transfer – Victim B.G.P. Family Trust | $100,000.00 | |
| 9/10/2025 | Incoming Wire Transfer – Victim B.G.P. Family Trust | $150,000.00 | |
| 9/19/2025 | Incoming Wire Transfer – Victim D.P. | $25,000.00 | |
| 9/23/2025 | Incoming Wire Transfer – Victim B.G.P. Family Trust | $48,500.00 | |
| 9/24/2025 | Incoming Wire Transfer – Victim D.P. | $25,000.00 | |

| 9/26/2025 | Check #1513 – West Central Georgia Bank | | $1,999.88 |
|---|---|---|---|
| 10/6/2025 | Incoming Wire Transfer – Victim M.U. | $50,000.00 | |
| 10/27/2025 | Check #9999 – West Central Georgia Bank | | $1,999.88 |
| 11/3/2025 | Deposit | $100,000.00 | |
| 11/19/2025 | Incoming Wire Transfer – Victim M.U. | $50,000.00 | |
| 11/20/2025 | Incoming Wire Transfer – Victim M.U. | $25,000.00 | |
| 11/26/2025 | Check #1605 – West Central Georgia Bank | | $1,999.88 |

33.     The Defendant Property was derived from proceeds traceable to violations of the fraud scheme based on numerous fraud indicators, including that 1) the wire transfers from the victims into the business bank account, Colony Account #4687 were used to fund J. Hall's personal expenses; 2) funds received from victims for the purpose of investing were rarely invested; and 3) funds from victims were invested into accounts owned by J. Hall.

*Conclusion*

34.    Based on the foregoing, probable cause exists to believe that the Defendant Property constitutes proceeds or were derived from proceeds traceable to violations of a specified unlawful activity, specifically, violations of 18 U.S.C. § 1343 (Wire Fraud), and is therefore, subject to forfeiture pursuant to Section 981(a)(1)(C).

35.    Additionally, probable cause exists to believe that the Defendant Property constitutes property involved in a transaction or attempted transaction, designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of a specified unlawful activity, in violation of Sections 1956 and 1957, of Title 18, United States Code (Money Laundering), or is property traceable to such property, and is therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States of America prays that:

a.    Pursuant to 18 U.S.C. § 985(b)(2), and 18 U.S.C. § 983(j), which permits the Court to "take any other action to . . . preserve the availability of [the] property subject to civil forfeiture", the Court issue the proposed Writ of Entry attached to this Verified Complaint authorizing the United States Department of Treasury, Internal Revenue Service, or their delegate, to enter the Defendant Property, including any structures, on one or more occasions during the pendency of this *in rem* forfeiture action:

> i.)    For the purpose of conducting an inspection, inventory and appraisal of the Defendant Property, which inspection, inventory and appraisal may include still and video photography;
>
> ii.)    To be accompanied on any such occasion by any

22

appraiser(s) selected by it to appraise the condition and value of the Defendant Property pursuant to 19 U.S.C. §1606;

iii.)   To be accompanied on any such occasion by any government or contract personnel selected by it for the purpose of conducting an inventory of the Defendant Property; and

iv.)  To be accompanied on any such occasion by any federal, state, and local law enforcement officers selected by it to ensure the safety of any person acting under the Writ of Entry.

b.      The Court order that the Defendant Property be forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and/or Section 981(a)(1)(A);

c.      Due notice be given to all parties to appear and show cause why forfeiture should not be decreed;

e.      Judgment be entered declaring the Defendant Property forfeited to the United States of America for disposition according to law; and

f.      The United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

23

Respectfully submitted, this 8th day of July, 2026.

WILLIAM R. KEYES
UNITED STATES ATTORNEY

BY:    */s/ Julius J. Jefferson*
       JULIUS J. JEFFERSON
       Texas Bar Number 24087797
       Assistant United States Attorney
       United States Attorney's Office
       Middle District of Georgia
       Post Office Box 1702
       Macon, Georgia 31202
       Telephone: (478) 752-3511
       Email: julius.jefferson@usdoj.gov